IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> vs. ) <br> ) <br> SCOTT GINSBERG ) | Case No. 14 CR 462 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, as Emergency Judge:

In 2007, Scott Ginsberg committed a series of very serious financial crimes. Acting, or at least claiming to act, as a real estate investor, he made a deal with the owners of an apartment complex to be paid "incentive payments" if he could find buyers to purchase multiple units. Ginsberg then recruited "buyers" with good credit and told them they could buy multiple units with no money down, rent them out, and then sell them at a profit, and that he would pay them as much as $10,000 for each purchase. Ginsberg then arranged financing for these straw purchasers, all the while concealing his arrangements with the owners and with the purchaser. He also submitted loan applications for the buyers that included multiple misrepresentations and significant omissions. If the lenders had known the truth, they would not have made loans at all, nor would they have loaned money based on the full purchase price had they known a significant part of the proceeds was going to Ginsberg rather than to the seller. Ginsberg's fraud was both well-planned and extensive. He was paid consulting fees of around $1.2 million, and when the loans went into default—as all thirty-two of them did—the lenders collectively lost over $3 million.

Ginsberg was charged with bank fraud in 2014. This was a full seven years after he carried out his scheme. He pled guilty in 2018. Ginsberg, who at the time of his sentencing was fifty-five years old, had no record of prior convictions. He is married and the father of six children currently ranging in age from twenty to eleven. The advisory range under the Sentencing Guidelines was fifty-seven to seventy-one months imprisonment. The sentencing judge imposed a carefully-considered and well-explained sentence of thirty months imprisonment, about half of the low end of the advisory range. The judge justified the below-range sentence on a number of bases including, as set out in the judgment and commitment order, the "length of time between [the] offense conduct and [the] date of conviction."

Ginsberg reported to prison on or about June 10, 2019, a little over eleven months ago (he received an unopposed extension of his originally-set surrender date). He has now filed an emergency motion for early release under 18 U.S.C. § 3582(c)(1)(A). He cites his medical conditions and his age (now just short of fifty-seven) and the risks posed by the coronavirus.

Ginsberg's motion is made under section 603(b) of the First Step Act, which amended 18 U.S.C. § 3582(c)(1)(A) to provide a greater role for courts in determining whether to reduce a defendant's sentence based on "extraordinary and compelling reasons" warranting a reduction. As amended, and as applicable here, the statute provides that

> [t]he court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—

2

>     (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>>         (i) extraordinary and compelling reasons warrant such a reduction;
>
>>         . . .
>
>     and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

The record reflects that on March 31, 2020, Ginsberg sent the warden of FCI Miami, where he is incarcerated, a request to be transferred to home confinement, specifically referencing the First Step Act. See dkt. no. 170-4. At some point after that—the record is not completely clear, but it was on or about April 15—Ginsberg re-sent the same request, having written in the citation of the statute (18 U.S.C. § 3582(c)(1)(A)(i)) and the phrase "CDC high risk criteria for death." Id. The government says that as of April 21, the Bureau of Prisons decided to treat the request as seeking compassionate release. It seems to argue (though it does not support) that the thirty-day clock should be considered to have started on that date, not on March 31 when Ginsberg sent his original request. Assuming the government is actually advancing that point, the Court disagrees. The request that Ginsberg sent on March 31 was sufficient to trigger the thirty-day period contained in the statute. Nothing in the statute, governing caselaw, or common sense requires a *pro se* prisoner to cite chapter and verse in order

3

to satisfy a statutory requirement of this sort.  Ginsberg's March 31 request referenced the First Step Act and discussed his medical conditions in great detail.  It was more than sufficient to put the warden and the BOP on notice that he was seeking compassionate release from prison.  And because more than thirty days has now run, Ginsberg has satisfied one of the two alternative statutory prerequisites for seeking relief in court.[1]

The next question is whether there are "extraordinary and compelling reasons" warranting a reduction.  Ginsberg cites the coronavirus outbreak and his age and medical condition, which he contends place him at a significantly greater risk of severe injury if he contracts the virus.  It appears to be undisputed that Ginsberg has a significant history of cardiac and respiratory disease.  These are confirmed risk factors for serious illness if one contracts coronavirus.  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 13, 2020).  At present, it appears there are no confirmed cases of coronavirus among either staff or incarcerated persons at FCI Miami, where Ginsberg is incarcerated.  *See* https://www.bop.gov/coronavirus/index.jsp (last visited May 13, 2020).  But the Court has no information about how much, if any, testing has been done among inmates at the prison.  Thus the fact that there are no confirmed cases does not mean that no one in the prison has contracted coronavirus.  If and when that happens, the virus is likely to spread more quickly there than in the general

---

[1] The Court notes that later submissions from the parties, requested by the Court, advise that Ginsberg's request for an early release has been approved by the warden at FCI Miami, but there are evidently several layers of BOP review that remain.  Given the circumstances, the Court is unpersuaded that it should wait for this process to play out, and the statute does not require this—rather, it simply require passage of thirty days after the detainee makes a request to the warden.

population due to, among other things, the difficulty of accomplishing social distancing in a prison environment and the constant influx of people coming and going from outside the prison, including correctional staff. (This is particularly true in Ginsberg's situation, as it appears he is housed in a so-called "dormitory" unit that has several dozen prisoners sleeping in the same room.) And although it appears that the vast majority of those who contract coronavirus do not suffer serious illness, one cannot discount the significant risk to Ginsberg if he contracts coronavirus, given his risk factors. This qualifies as an extraordinary reason warranting consideration of a reduction of his sentence.

The next question is whether a reduction "is consistent with applicable policy statements issued by the Sentencing Commission." The policy statements issued by the Sentencing Commission even before the passage of the First Step Act included an open-ended provision broad enough to cover the circumstances argued by Ginsberg. *See* U.S.S.G. § 1B1.13, app. note 1(D). *See, e.g., United States v. Reyes*, No. 04 CR 970, 2020 WL 1663129, at *2 (N.D. Ill. Apr. 3, 2020) (Leinenweber, J.).

Finally, section 3582(c)(1)(A) requires the Court to consider the factors regarding imposition of an appropriate sentence set forth in 18 U.S.C. § 3553(a). These include Ginsberg's history and characteristics; the nature and circumstances of the crimes; due consideration of the seriousness of the crimes; promoting respect for the law; providing just punishment; affording adequate deterrence; protecting the public from further crimes by Ginsberg; and providing him with any necessary services and treatment.

Ginsberg's crimes were unquestionably serious, and banks suffered significant losses as a result. Under normal circumstances, he would serve about another twelve

5

months, or perhaps less, in prison. Specifically, Ginsberg's current release date, per the Bureau of Prisons website, is in late July 2021, but were he to serve out his sentence he would actually be released to a residential reentry center at least sixty days before that, possibly more. So in reality he is no more than a year from release from prison.

The reduction that Ginsberg seeks is undeniably significant as compared to his overall sentence, but it is warranted under the circumstances. As the sentencing judge noted in the judgment, a *very* long time passed between Ginsberg's crimes and the return of charges against him. Given the circumstances, his service of nearly a year in prison is sufficient to impose just punishment and deter him and others, and it does not diminish the seriousness of his crimes or undercut respect for the law. This is particularly so because the Court will, as a condition of reducing Ginsberg's prison term, add a supervised release condition of six months home detention with location monitoring. In other words, Ginsberg's liberty will continue to be restricted in a significant way for the next six months.

None of what the Court has said should be understood to suggest any disagreement with the sentence imposed by the sentencing judge. That sentence, as the Court has stated, was carefully thought out and meticulously justified. But circumstances have changed in a material and unanticipated way. At this point, given Ginsberg's significant prior medical conditions and the risk he faces if exposed to the coronavirus, a reduction of his sentence is justified.

## Conclusion

For the reasons stated, the Court grants defendant Scott Ginsberg's emergency motion for release under 18 U.S.C. § 3582 [dkt. no. 170] and reduces the defendant's

6

prison sentence to time served. This is conditioned, however, upon a modification of the terms of his supervised release to add a requirement that the defendant serve the first six months of his release on home detention.[2] Compliance with this condition shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and Ginsberg shall abide by all technology requirements. The Clerk will prepare an amended judgment and commitment order.

Date: May 14, 2020

                                                      _____
                                                      MATTHEW F. KENNELLY
                                                      United States District Judge

---

[2] The Court imposes this condition in order to facilitate Hansen's reentry to the community.